IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD PEVIA,                    *

Plaintiff,                       *

v.                               *           Civil Action No. ELH-20-3270

STEPHEN MOYER, *et al.*,         *

Defendants.                      *
                               ***

## MEMORANDUM OPINION

Donald R. Pevia is a prisoner at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. On November 10, 2020, he filed suit under 42 U.S.C. § 1983 against Stephen Moyer, then Secretary of the Department of Public Safety and Correctional Services ("DPSCS"); the Commissioner of DPSCS;[1] Warden Frank Bishop; Assistant Warden Jeffrey Nines; and Lt. Vaughn Whitemen alleging denial of his constitutional rights. ECF 1. Pevia included several exhibits with the suit. ECF 1-1.

Defendants Moyer, Bishop, Nines, and Whitemen have moved to dismiss or, in the alternative, for summary judgment. ECF 10. It is supported by a memorandum. ECF 10-1 (collectively, the "Motion"). Plaintiff opposes the Motion. ECF 14. He has also filed a supplemental opposition (ECF 13), supported by exhibits, as well as a motion to appoint counsel (ECF 15).

No hearing is necessary to resolve the motions. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, plaintiff's motion to appoint counsel is denied, without prejudice. And, the defense Motion, construed as a motion to dismiss, is denied.

---

[1] The current Commissioner of the Division of Correction is Wayne Hill. The Clerk shall be directed to amend the docket accordingly.

I. **Non-Dispositive Motions**

Plaintiff has moved to appoint counsel. A pro se prisoner does not have a general right to counsel in a § 1983 action. *Evans v. Kuplinski*, 713 Fed. Appx. 167, 170 (4th Cir. 2017). The power of a federal district court judge to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and an indigent claimant must present "exceptional circumstances." *Kuplinski*, 713 Fed. App'x at 170; *see Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Upon consideration of the filings by plaintiff, the court finds that he has demonstrated the wherewithal either to articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. Moreover, the issues pending before the court are not unduly complicated. Therefore, there are no exceptional circumstances at this time that would warrant the appointment of an attorney to represent plaintiff under § 1915(e)(1). Accordingly, the motion (ECF 15) is denied, without prejudice.

II. **Factual Background**

Plaintiff alleges that defendants violated his rights under the Eighth Amendment to the Constitution by intentionally double celling him in a cell that was designed to hold only one person and by keeping him confined to the cell 22 hours per day. ECF 1-1 at 5. He seeks monetary damages and declaratory relief. ECF 1-1 at 28.

A. Administrative Remedy Procedure ("ARP") NBCI-2432-19

Pevia states that he was transferred from Roxbury Correctional Institution to NBCI on or about October 14, 2011. ECF 1-1 at 24. According to Pevia, while housed at NBCI he has been forced to live in unconstitutional conditions. *Id*. He contends that the cells were designed to hold one inmate but, due to over-crowding, two inmates are placed in a cell. *Id*. Further, he alleges that this double celling creates a hostile environment which endangers everyone's safety. *Id*.

Plaintiff filed ARP NBCI-2432-19 on December 4, 2019, complaining that his rights under the Eighth Amendment were violated because he was double celled in a cell designed to hold only one inmate. ECF 1-1 at 5. Pevia explains that NBCI was designed to house one inmate in each cell and that unidentified staff altered documents to justify the double celling of inmates. *Id*. Pevia states that NBCI used a cell schematic that showed the cells were 80 feet in area but, in actuality, they are only 60 feet. *Id.* at 6. Further, Pevia claims that he is required to be provided 25 feet of unencumbered space, which is not provided. *Id*. He also alleges that if he is locked in his cell more than 10 hours per day, standards governing correctional facilities require that he be provided 80 feet of space. *Id*. He states he has back problems from having to always sit or lay down and not being able to exercise. *Id*. Pevia's appeals of the ARP dismissal, including to the Inmate Grievance Office, were denied.

B. ARP NBCI-0697-20

Pevia explains that since being housed at NBCI he has been placed in hostile environments due to the double celling conditions. ECF 1-1 at 25. Even though, in Pevia's opinion, he is to be housed in a single cell or provided more out of cell activity, Lt. Whitemen, the housing unit manager (ECF 1 at 2), has created a policy that disallows courtesy moves. ECF 1-1 at 25. Further,

3

Pevia has been advised that his only remedy is to refuse his housing assignment and be placed on lock up. *Id*. He alleges that when administrators decided to house two inmates instead of one in the cells at NBCI, no modifications were made to the cells, forcing cellmates to fight over who gets to plug in their appliances. *Id*.

On March 28, 2020, Pevia filed another ARP alleging that his rights under the Eighth Amendment were violated because he was held, with another inmate, for 22 hours a day in a cell designed for one person. ECF 1-1 at 15. He alleged that because the cells were designed to hold only one inmate, there are insufficient outlets to plug in appliances, leading to hostility among the cellmates and forcing Pevia either to refuse housing or fight his cellmate. *Id*. Pevia's appeals of the denial of his ARP were denied, including at the IGO.

### III.  Standard of Review

Defendants styled their motion as a motion to dismiss or, in the alternative, for summary judgment. As they have not provided any exhibits in support of their Motion, and for the reasons that follow, the court construes the Motion as one to dismiss. I shall deny the Motion.

A defendant may test the legal sufficiency of a plaintiff's complaint by way of a motion to dismiss under Rule 12(b)(6). *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005)

(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts]

in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

6

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

"[B]efore treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id*.

Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### IV.     Discussion

Defendants argue that plaintiff failed to exhaust his administrative remedies as to each of his claims; they are entitled to public official immunity; and plaintiff has not sufficiently pleaded personal participation.  ECF 10-1.  I disagree.

A.  Failure to Exhaust

Defendants contend that plaintiff failed to "attach proof of exhaustion to his complaint" and did not provide proof that he sought judicial review in a Maryland Circuit Court, as required under Maryland law.  ECF 10-1 at 9.  The court does not construe plaintiff's Complaint as asserting any state law claims.  Therefore, the argument that he failed to comply with the Maryland Prisoner Litigation Act, Md. Code, Cts. & Jud. Proc. § 5-1001 *et seq.*, is unavailing.

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996), codified, as amended, at 42 U.S.C. § 1997e(a), governs cases brought by inmates in federal court.  It states, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Inmates must exhaust administrative remedies before bringing "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The grievance process is "important because it gives a prison a full 'opportunity to correct its own mistakes' before federal litigation is launched."  *Moss v. Harwood*, ___ F.4th ___, 2021 WL 5702989, at *4 (4th Cir. Dec. 2, 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).  The Supreme Court has said that the PLRA's exhaustion requirement allows "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints

9

are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008) (stating that exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies).

The process is designed so that prisoners pursue administrative grievances until they receive a final decision as to the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Chase v. Peay*, 286 F. Supp. 523, 530 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002). Moreover, "given the PLRA's 'mandatory language,' there is no room to excuse a failure to exhaust all available remedies . . . ." *Moss*, 2021 WL 5702989, at *4 (citation omitted).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not, as defendants contend, impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and

proven by defendants.  *See Bock*, 549 U.S. at 215-16; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory.").  Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines."  *Woodford*, 548 U.S. at 88, 93.  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  *Id.* at 93 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original).  But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In Maryland prisons, for the type of grievances asserted by plaintiff, the Administrative Remedy Procedure is the administrative process that must be exhausted.  *See* Code of Maryland Regulations ("COMAR"), § 12.02.28.02(B)(1), (D) (2018).  First, a prisoner must file an ARP with the warden within 30 days of the incident at issue.  COMAR § 12.02.28.05(D)(1) (requiring filing with the "managing official"); COMAR § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); COMAR § 12.02.28.09(B) (setting the 30-day deadline).

Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days.  COMAR § 12.02.28.14(B)(5).  If the appeal is denied, the prisoner must appeal within 30 days to the Inmate

Grievance Office ("IGO"). *See* Md. Code, §§ 10-206, 10-210 of the Correctional Services Article ("C.S."); COMAR § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in a Maryland circuit court. *See* C.S. § 10-210(a). Although the final agency determination is subject to judicial review in a Maryland state court, contrary to defendants' argument, an inmate is not required to seek such judicial review in order to satisfy the PLRA's administrative exhaustion requirement. *See Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

However, in *Ross v. Blake,* 578 U.S. 632 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id*. at 635. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 637. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 636. Notably, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable, so that an inmate's duty to exhaust available remedies "does not come into play." *Id.* at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644.

In his Complaint, plaintiff alleges that he exhausted his administrative remedies appealing the denial of his ARP to the Commissioner and then to the IGO as to each of his claims. And, he has provided some evidence that he has done so. The defendants have failed to offer any evidence that plaintiff has not properly exhausted his available administrative remedies.

B. Immunity

The defendants contend that they are entitled to immunity under Maryland law for any tortious acts or omissions occurring within the scope of their public duties. *See* ECF 10-1 at 10; Md. Code § 5-522(b) of the Courts and Judicial Proceedings Article. As previously noted, however, the court does not construe plaintiff's Complaint as asserting any state law claims. As such, this defense is not applicable.

C. Personal Participation

Lastly, the defendants argue that plaintiff has failed sufficiently to plead personal conduct on the part of the named defendants in regard to the alleged constitutional violations. ECF 10-1 at 11.

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). But, the court disagrees with the defendants' contention that plaintiff failed to allege adequately the personal participation by defendants in the alleged constitutional violations. Liberally construed, plaintiff alleges that defendants Moyer, Bishop, and Nines are responsible for the policies he complains about regarding double celling and keeping inmates in their cells 22 hours each day. Further, he alleges that Whitemen, the housing unit officer, will not approve any "courtesy moves" to alleviate the time spent double celled. Plaintiff's allegations are sufficient to survive the Motion.

## IV. Conclusion

For the foregoing reasons, defendants' motion seeking dismissal is DENIED. Plaintiff's motion to appoint counsel is DENIED. A separate Order follows.

December 13, 2021  /s/
Date  Ellen L. Hollander
 United States District Judge